UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GEOFFREY WANJOHI, *et al.*, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) Case No. 2:21-cv-00742-SGC |
| PIONEER INVESTMENT & DEVELOPMENT, *et al.*, | ) ) ) ) |
| Defendants. | ) ) |

# **MEMORANDUM OPINION AND ORDER**[1]

This lawsuit alleges violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). (Doc. 11). The plaintiffs, Geoffrey Wanjohi and Teresa Perez Lopez, claim they are owed back overtime wages by the defendants, Pioneer Investment & Development, LLC, and Arzaan Food Mart, LLC. (*Id.*). Presently pending are the cross-motions for summary judgment filed by the plaintiffs (Doc. 35) and Arzaan (Doc. 31). As explained below, both motions are due to be granted in part.

## I.   PROCEDURAL HISTORY

Wanjohi initiated this matter by filing a collective action complaint against Pioneer on May 28, 2021. (Doc. 1). On June 24, 2021, the plaintiffs filed an amended complaint adding Lopez as a plaintiff against Pioneer. (Doc. 5). Lopez

---

[1] The parties have consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c). (Doc. 18).

and Wanjohi were the only parties who consented to join as plaintiffs. (Doc. 6). On July 23, 2021, the plaintiffs filed the Second Amended Complaint, the operative compliant in this matter, adding Arzaan as a defendant. (Doc. 11). A motion for leave to file a Third Amended Complaint, premised on adding new defendants that may have purchased Pioneer, was denied without prejudice. (Docs. 34, 45).

As noted above, there are cross-motions for summary judgment pending, although Pioneer has not sought summary judgment. Arzaan's motion (Doc. 31) is fully-briefed and ripe for adjudication (Docs. 32-33, 40-41), as is the plaintiffs' joint motion (Docs. 35-39, 42-43).

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56 of the *Federal Rules of Civil Procedure*, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, the non-moving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to

interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome of the case will preclude summary judgment. *Id.* All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." *S. Pilot Ins. Co. v. CECS, Inc.*, 52 F. Supp. 3d 1240, 1242-43 (N.D. Ga. 2014) (citing *Am. Bankers Ins. Group v. United States,* 408 F.3d 1328, 1331 (11th Cir. 2005)). "The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." *Id.*

## III.   FACTS

The plaintiffs worked at a convenience store located on McFarland Boulevard (the "McFarland Store") in Tuscaloosa, Alabama.  (Doc. 36-1 at 1; Doc. 36-23 at 1; Doc. 36-24 at 20-21).  The McFarland Store was owned by Pioneer; Pioneer also owned a convenience store located on 15th Street in Tuscaloosa.  (Doc. 36-24 at 5; Doc. 36-1 at 2).  Nisha Bagani owns Pioneer, but she had very little involvement with operating the stores.  (Doc. 36-24 at 5; Doc. 36-29 at 5).  Instead, Aziz Hirani oversaw the Pioneer stores during the relevant time.  (Doc. 36-24 at 5-6; Doc. 36-29 at 6).  Hirani handled all aspects of the day-to-day operations, including approving payroll for Pioneer employees. (Doc. 36-24 at 5-6, 11-12).  Hirani also testified as Pioneer's corporate representative in this case.  (*Id.* at 4-5, 63-66).

Hirani interviewed and hired Wanjohi to manage the McFarland Store in March 2017; Wanjohi worked there until he left in January 2021.  (Doc. 36-28 at 6; Doc. 36-24 at 8, 20).  Wanjohi did not speak to Nisha Bagani prior to working at the McFarland Store; indeed, he never had a conversation with Nisha Bagani.  (Doc. 36-28 at 6, 9). Instead, Wanjohi dealt exclusively with Hirani, whom he assumed owned the McFarland Store.  (*Id.* at 6-7).  Wanjohi also recommended Lopez; Hirani interviewed and hired her in July 2019.  (*Id.* at 8; Doc. 36-23 at 1; Doc. 36-24 at 21). Lopez worked at the McFarland Store until June 2021.  (Doc. 36-23 at 1; Doc. 36-24 at 1).

4

Pioneer used an accounting firm, Profitability Squared, to prepare its payroll and tax records. (Doc. 36-35 at 3-4; *see* Doc. 36-24 at 8, 12-13, 17). Hirani was Pioneer's contact for Profitability Squared. (Doc. 36-35 at 4). The payroll records Profitability Squared generated reflect the information Pioneer provided regarding the plaintiffs' hourly wages and the hours they worked each week. (*Id.* at 12-14). These payroll records show the plaintiffs always worked exactly forty hours per week. (*Id.* at 12-14, 40-46; Doc. 36-36; Doc. 36-38 at 1-3). Regarding hourly wages, the payroll records reflect: (1) Wanjohi initially earned $7.25, which was later raised to $8.00; and (2) Lopez earned $7.25 per hour. (Doc. 36-35 at 40-46; Doc. 36-36; Doc. 36-38 at 1-3; Doc. 39-1; Doc. 39-2).

Profitability Squared's payroll records notwithstanding, Hirani testified—as Pioneer's corporate representative—that they do not accurately reflect the plaintiffs' wages, the hours they worked, or the amounts they were paid. (Doc. 36-24 at 13, 17). Hirani testified the plaintiffs regularly worked more than forty hours per week and were paid the same hourly rate for all hours worked. (*Id.* at 13-14). Additionally, the hourly rates Pioneer actually paid the plaintiffs were higher than the rates reflected on the payroll records: (1) Wanjohi's initial hourly wage was $13.50, which was subsequently raised to $14.00; and (2) Lopez's initial hourly wage was $9.00, later raised to $10.00 and then $11.00. (*See* Doc. 36-1 at 4-5; Doc.

36-28 at 10; Doc. 36-23 at 1, 3).[2]

Hirani and the plaintiffs agree the employees at the McFarland Store—including the plaintiffs—kept track of the hours they actually worked by filling out timecards.[3] (Doc. 36-1 at 2; Doc. 36-23 at 2; Doc. 36-24 at 11-13; Doc. 36-28 at 6). At the end of the week, Wanjohi would send a photograph of his timecard—and those of the other McFarland Store employees'—to Hirani. (Doc. 36-28 at 6-7; Doc. 36-23 at 2; Doc. 36-1 at 2; Doc. 36-24 at 11-12). Hirani testified he reviewed and approved the timecards and would direct Wanjohi to pay himself and the other employees at the McFarland Store. (Doc. 36-24 at 10-12). Wanjohi typically paid himself, Lopez, and the other employees with cash from the register. (*Id.* at 13; Doc. 36-28 at 7, 9-10). Lopez complained to Wanjohi about not receiving overtime pay. (Doc. 36-28 at 9-10). Wanjohi repeatedly asked Hirani about overtime pay and relayed Lopez's concerns; Hirani told Wanjohi that Pioneer did not pay overtime, and Hirani did not speak to Lopez about the issue. (*Id.* at 10-11).

Nisha Bagani—Pioneer's owner—is married to Ahmed Bagani. (Doc. 36-29 at 5). Ahmed Bagani owns Arzaan. (Doc. 36-30 at 3). Arzaan operates a convenience store in Sylacauga, Alabama. (*Id.*). Wanjohi testified he never spoke

---

[2] Hirani's testimony confirms the plaintiffs' actual hourly rates were higher than reflected in the payroll records generated by Profitability Squared. (Doc. 36-24 at 14,17).

[3] Old timecards were stored in a drawer at the McFarland Store. Wanjohi took some of the timecards with him when he left Pioneer. (Doc. 36-28 at 8). Many of the timecards appear on the record here. (*E.g.* Doc. 36-2 through Doc. 36-20).

to Ahmed Bagani about working for Arzaan,[4] never went to an Arzaan location, and never received a paycheck from Arzaan. (Doc. 36-28 at 9). However, Wanjohi received a W-2 for wages purportedly paid by Arzaan in 2020, and Arzaan's payroll records list Wanjohi as an employee. (*See* Doc. 36-30 at 25; Doc. 36-35 at 17; Doc. 36-37 at 14).[5] Moreover, Ahmed Bagani—as Arzaan's corporate representative—testified Wanjohi was employed by Arzaan at the same time he was employed by Pioneer. (Doc. 36-30 at 9, *see id.* at 3, 21-24).

## IV.  DISCUSSION

A plaintiff pursuing an FLSA claim must demonstrate employment by a defendant engaged in interstate commerce and that the defendant failed to pay minimum or overtime wages. *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1277 n.68 (11th Cir. 2008). The FLSA requires employers to pay overtime to employees who are "employed" more than forty hours per week. 29 U.S.C. § 207(a)(1). The term "employ" is defined as "to suffer or permit to work." 29 U.S.C. § 203(g); *see also Reich v. Dep't. of Conserv. and Nat. Res., State of Ala.*, 28 F.3d 1076, 1082 (11th Cir. 1994). The FLSA requires employers to pay one and one-half times the "regular rate" of pay for overtime hours. *See* 29 U.S.C. § 207(a)(1).

---

[4] Indeed, Wanjohi testified he never had a conversation with Ahmed Bagani. (Doc. 36-28 at 9).

[5] Profitability Squared prepares W-2s for Arzaan, and it issued the W-2 showing Arzaan paid Wanjohi wages of $5,220 in 2020. (Doc. 36-30 at 25).

Although the statute does not define "regular rate," the Supreme Court has stated "the regular rate refers to the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945); *see* 29 C.F.R. § 778.108. The Department of Labor has adopted this definition and stated the regular rate cannot be less than the minimum wage. 29 C.F.R. §§ 778.107, 778.108.

A plaintiff asserting an FLSA claim "must prove that [they were] suffered or permitted to work without compensation." *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007). A plaintiff pursuing an overtime claim must show: (1) they worked overtime hours without compensation; and (2) the defendant knew—or should have known—about the overtime work. *See Reich*, 28 F.3d at 1082. Although an FLSA plaintiff bears the burden of proving he or she worked overtime without compensation, the "remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Employers have a duty to keep records of the employee's wages and hours and occupy a superior position to know and produce the most probative evidence concerning the nature and amount of work performed. *Id.* Moreover, employees "seldom keep such records themselves." *Id.* Thus, a plaintiff's burden of proof is "greatly lessened where an employer failed to keep

8

adequate records." *Jarmon v. Vinson Guard Servs., Inc.*, No. 08-02106-VEH, 2010 WL 11507029, at *7 (N.D. Ala. July 13, 2010).

For the reasons articulated above, FLSA plaintiffs may rely on "anecdotal and imprecise" evidence to satisfy their initial burden where employers have not kept accurate records. *Bautista Hernandez v. Tadala's Nursery, Inc.*, 34 F. Supp. 3d 1229, 1241-42 (S.D. Fla. 2014) (citing *Anderson,* 328 U.S. at 687).  Where employment records are inadequate, the employee satisfies his initial burden by proving "he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Lamonica v. Safe Hurricane Shutters, Inc.,* 711 F.3d 1299, 1315 (11th Cir. 2013) (quoting *Anderson*, 328 U.S. at 687-88).  Once an employee satisfies his initial burden, the employer must present:

> evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* "Employees, therefore, may recover even though the amount may be uncertain and the damages difficult to calculate." *Tadala's Nursery*, 34 F. Supp. 3d at 1241-42 (citing *Washington v. Miller,* 721 F.2d 797, 803 (11th Cir. 1983), *Reeves v. Int'l Tel. & Tel. Corp.,* 616 F.2d 1342, 1352 (5th Cir. 1980), and *Marshall v. Mammas Fried Chicken, Inc.,* 590 F.2d 598, 599 (5th Cir. 1979)).

Under the FLSA, actions to recover unpaid overtime compensation must be brought within two years after the cause of action accrued. 29 U.S.C. § 255(a). If the employer "willfully" violated the FLSA, the limitation period is extended to three years. *Id.* In order to prove a willful violation, the employees must show "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988).

Finally, the FLSA provides for liquidated damages equal to the amount of unpaid overtime. 29 U.S.C. § 216(b). However, if the defendant can show it acted in good faith, the court has discretion to withhold the liquidated damages. 29 U.S.C. § 260. The good faith inquiry has both an objective and a subjective component. *Dybach v. State of Fla. Dep't of Corr.,* 942 F.2d 1562, 1566 (11th Cir.1991). To satisfy the subjective component, an employer bears the burden of proving it had "an honest intention to ascertain what the FLSA requires and to act in accordance with it." *Id.* (alterations incorporated; punctuation omitted)

Having set out the governing law, the pending motions are addressed below. As previously noted, there are two motions for summary judgment: the plaintiffs' (Doc. 35) and Arzaan's (Doc. 31). In response to Arzaan's motion, Lopez has conceded her claims against that defendant. (Doc. 40 at 2). Thus, the only remaining

claims against Arzaan are those asserted by Wanjohi. The motions as they relate to the particular parties are addressed in turn.

### A. Plaintiffs' Motion for Summary Judgment as to Pioneer

Pioneer acknowledges it employed the plaintiffs and was engaged in interstate commerce. (*See* Doc. 39 at 6). Thus, the only issue is whether Pioneer failed to provide overtime compensation to the plaintiffs. Hirani—as Pioneer's corporate representative—testified the payroll records generated by Profitability Squared do not accurately reflect either the amount of hours the plaintiffs worked or the amount of their hourly pay. (Doc. 36-24 at 17). Indeed, Profitability Squared created the records based solely on the false wage and hour information provided by Pioneer. (Doc. 36-35 at 12). Hirani testified the plaintiffs' actual hourly wages and the hours they worked were reflected on the timecards Wanjohi submitted to him for approval. (Doc. 36-24 at 10-12). Accordingly, even viewing the facts in the light most favorable to Pioneer, it is undisputed the payroll records prepared by Profitability Squared are inaccurate.

Because Pioneer has not kept accurate wage and hour records for its employees, the plaintiffs' initial burden to show improper overtime compensation is "greatly lessened," and they may rely on "anecdotal and imprecise" evidence. *Jarmon*, 2010 WL 11507029, at *7; *Tadala's Nursery*, 34 F. Supp. 3d at 1242; *see Lamonica*, 711 F.3d at 1315. The plaintiffs have produced evidence that they

regularly worked more than forty hours per week but received the same hourly wage for all hours worked. Hirani's testimony confirms the plaintiffs' assertions in this regard.

To establish the amount and extent of work they performed, the plaintiffs rely on the weekly timecards Hirani approved. These timecards show the hours the plaintiffs worked and, often, the amount they were paid; dividing the amount by the hours worked reveals the regular rate for a given week. (*See* Doc. 36-34). The record includes timecards covering the majority of the weeks the plaintiffs worked.[6] To fill in the blanks created by the missing timecards, the plaintiffs have calculated the hours worked by averaging the weekly hours reflected in the existing timecards. (*See id.*). This constitutes "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Lamonica*, 711 F.3d at 1315. Accordingly, the plaintiffs have met their initial burden to show the amount of overtime pay Pioneer owes.

Because the plaintiffs have made an initial showing of improper compensation, the burden shifts to Pioneer to present evidence sufficient to overcome it. *Lamonica,* 711 F.3d at 1315. To that end, Pioneer's single paragraph of substantive argument relies exclusively on the payroll records created by

---

[6] Out of 128 weeks, Wanjohi is missing timecards for 24. (Doc. 36-34 at 7-10). Out of 91 weeks Lopez worked at Pioneer, she is missing timecards for 28. (*Id.* at 11-15).

Profitability Squared, purporting to show the plaintiffs never worked more than forty hours a week. (Doc. 39 at 6). It is undisputed that the payroll records in question are inaccurate fabrications, and therefore they do not overcome the plaintiffs' showing.[7] Because Pioneer makes no other arguments concerning the plaintiffs' claims, the plaintiffs are entitled to judgment as a matter of law on their FLSA overtime claims. *See Lamonica,* 711 F.3d at 1315.

To determine Wanjohi's damages, the court must determine whether Pioneer's FLSA violations were willful and, thus, subject to the three—as opposed to two—year statute of limitations.[8] In order to prove a willful violation, the plaintiffs must show Pioneer knew its conduct violated the FLSA or recklessly disregarded that risk. *McLaughlin*, 486 U.S. at 133. Even viewing the facts in the light most favorable to Pioneer, it willfully violated the FLSA's overtime provisions. First, it is undisputed that when confronted with Wanjohi's questions, Hirani simply stated Pioneer did not pay overtime. Next, Pioneer's undisputed record-keeping shenanigans support a finding of willfulness. While Pioneer reported to Profitability

---

[7] To the extent Pioneer may rely on the plaintiffs' W-2s to establish their wages and hours, the W-2s were based on the same inaccurate wage and hour information Pioneer provided to Profitability Squared. (*See* Doc. 39 at 6). These W-2s are perfect illustrations of the adage "garbage in, garbage out."

[8] Because all of Lopez's claims accrued less than two years before the complaint was filed, her damages are the same regardless whether Pioneer's conduct was willful.

Squared that the plaintiffs worked forty hours every week,[9] they regularly worked many more hours. These intentional efforts to conceal Pioneer's noncompliance with the FLSA demonstrate the willfulness of the violations. *Solis v. El Matador, Inc.*, No. 08-2237, 2011 WL 1671561, at *5 (C.D. Ill. May 3, 2011); *see Donovan v. Pointon,* 717 F.2d 1320, 1323 (10th Cir. 1983) (finding willful violation where employer kept business records to falsely show FLSA compliance). Accordingly, the three-year limitation period applies to Wanjohi's claims.

To calculate their damages, the plaintiffs have multiplied the overtime hours they worked in a given week—reflected on the timecards or deduced by averaging—by half the applicable hourly rates for that week.[10] This constitutes sufficient evidence to show "the amount and extent of" the work the plaintiffs performed "as a matter of just and reasonable inference." *Lamonica*, 711 F.3d at 1315. For Lopez, the plaintiffs' calculations show she is entitled to $6,484.82 in overtime pay. For Wanjohi, these calculations show he—over the three-year limitation period—is entitled to $34,673.94 in unpaid overtime compensation. (Doc. 36-34). While the plaintiffs' precise damages are uncertain, particularly where they have relied on averages to stand in for the missing timecards, this does not prevent their recovery

---

[9] Although not determinative, it is worth noting Pioneer's underreporting reduced its payroll tax liability, which was further reduced by its underreporting of employees' hourly pay rates.

[10] As the plaintiffs acknowledge, because Pioneer already paid the regular rate for all hours worked, they are only entitled to the additional overtime pay for hours they worked in excess of forty in a given week.

14

under the circumstances of this case. *Tadala's Nursery*, 34 F. Supp. 3d at 1241-42. Indeed, in response to the plaintiffs' thorough and well-supported motion for summary judgment, Pioneer has only relied on the payroll records created by Profitability Squared—records Pioneer effectively admits are worthless. Thus, Pioneer has not offered evidence showing "the precise amount of work performed or [] evidence to negative the reasonableness of the inference to be drawn from the [plaintiffs'] evidence." *Lamonica,* 711 F.3d at 1315. Given Pioneer has failed to offer any such evidence—or even any argument—it is proper to award the plaintiffs damages. *Id.* Moreover, the plaintiffs' calculations of the overtime compensation owed by Pioneer are essentially uncontested.

Based on the foregoing, Wanjohi is entitled to $34,673.94 in unpaid overtime compensation, while Lopez is entitled to $6,484.82. Additionally, the plaintiffs are entitled to liquidated damages equal to their unpaid overtime pay. 29 U.S.C. § 216(b). Pioneer has not pointed to any evidence to show it acted in good faith and thus has utterly failed to satisfy its burden in this regard. 29 U.S.C. § 260; *see Cloutier v. City of Phenix City*, 834 F. Supp. 366, 372-74 (M.D. Ala. 1993) (plaintiffs entitled to liquidated damages where employer offered no evidence it acted in good faith). With liquidated damages included: (1) Wanjohi is entitled to a total of $69,347.88 in damages from Pioneer; and (2) Lopez is entitled to a total of $12,969.64 in damages from Pioneer.

## B. **Arzaan's Motion for Summary Judgment and Wanjohi's Motion for Summary Judgment as to Arzaan**

As previously noted, Lopez has conceded her claims against Arzaan; Arzaan's motion for summary judgment will be granted with respect to Lopez. Thus, only Wanjohi's claims against Arzaan remain. Arzaan contends it never employed Wanjohi, either in the conventional sense or under a joint employer theory. (Doc. 33 at 7-9). Arzaan points to Wanjohi's testimony that he never: (1) worked at an Arzaan location; (2) received pay from Arzaan; and/or (3) spoke to Bagani about working for Arzaan. (*Id.*). (*Id.* at 8-9). Meanwhile, Wanjohi points to several pieces of conflicting evidence: (1) the W-2 Arzaan issued showing it paid Wanjohi wages in 2020; (2) Arzaan payroll records listing Wanjohi as its employee; and (3) Bagani's testimony—as Arzaan's corporate representative—that Wanjohi was its employee. (*See* Doc. 40 at 2).

Viewed in the light most favorable to Wanjohi, there is a factual issue regarding whether he was an Arzaan employee. In particular, Ahmed Bagani's affirmative testimony alone probably bars summary judgment in Arzaan's favor. While a corporate representative's testimony does not rise to the level of a judicial admission with conclusive effect, it is an evidentiary admission to which Arzaan is bound for purposes of summary judgment. *See Tedder v. Ethicon, Inc.*, No. 20-5611, 2022 WL 970683, at *4 (N.D. Fla. Mar. 31, 2022). Even if this testimony was not sufficient to preclude summary judgment for Arzaan, it is one of several pieces of

evidence supporting the conclusion that Arzaan employed Wanjohi. Accordingly, there are genuine issues of material fact concerning Wanjohi's employment status. Because this is the only argument presented by Arzaan, its motion for summary judgment will be denied as to Wanjohi.

The same factual issues concerning Wanjohi's employment status prevent summary judgment in his favor against Arzaan. Viewed in the light most favorable to Arzaan, there are genuine issues of fact concerning whether it ever employed Wanjohi. Bagani's evidentiary admission that Wanjohi was an Arzaan employee does not conclusively establish that fact, and other evidence weighs against his employee status. Specifically, Wanjohi testified he never: (1) worked at an Arzaan location; (2) received a paycheck from Arzaan; and/or (3) spoke to Bagani about working for Arzaan.

Next, to the extent Wanjohi relies on the joint employer doctrine, the evidence does not support summary judgment in his favor under this theory. Courts typically rely on eight factors to determine whether a defendant is a joint employer under the FLSA:

> (1) the nature and degree of control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the power to determine the pay rates or the methods of payment of the workers; (4) the right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; (5) preparation of payroll and the payment of wages; (6) ownership of facilities where work occurred; (7) performance of a specialty job integral to the business; and (8) investment in equipment and facilities.

17

*See Freeman v. Key Largo Volunteer Fire & Rescue Dep't, Inc.,* 494 F. App'x 940, 943 (11th Cir. 2012) (discussing *Layton v. DHL Exp. (USA), Inc.,* 686 F.3d 1172, 1176-78 (11th Cir. 2012)). No single factor is dispositive. *Layton*, 686 F.3d at 1177. Viewed in the light most favorable to Arzaan, none of these factors weigh in Wanjohi's favor.

Finally, even if Wanjohi could establish his status as an employee, his motion for summary judgment against Arzaan would nonetheless fail. While the plaintiffs have overwhelming and uncontroverted evidence that Pioneer failed to pay them overtime, there is no evidence that Wanjohi even worked overtime hours for Arzaan, much less that Arzaan failed to properly compensate him. While the 2020 W-2 indicates Arzaan paid Wanjohi wages, it does not shed any light on the overtime inquiry. Accordingly, genuine issues of material fact preclude summary judgment in Wanjohi's favor against Arzaan.

## V.   CONCLUSION

For all of the foregoing reasons and as specified below, the parties' cross-motions for summary judgement are **GRANTED IN PART** and **DENIED IN PART**. (Docs. 31, 35).

Regarding the plaintiffs' motion for summary judgment, there are no genuine issues of material fact, and they are entitled to judgment as a matter of law against Pioneer. Accordingly, the plaintiffs' motion for summary judgment is **GRANTED**

as to Pioneer. (Doc. 35). In this respect, the plaintiffs are entitled to unpaid overtime and liquidated damages in the following amounts: Wanjohi is entitled to a total of $69,347.88; and Lopez is entitled to a total of $12,969.64. Genuine issues of material fact preclude judgment as a matter of law against Arzaan. Accordingly, the plaintiffs' motion for summary judgment is **DENIED** in all other respects.

Arzaan's motion for summary judgment is **GRANTED** as to Lopez, who has conceded her claims. (Doc. 31). Genuine issues of material fact preclude judgment as a matter of law against Wanjohi. Accordingly, Arzaan's motion for summary judgment is **DENIED** in all other respects.

**DONE** this 22nd day of March, 2024.

/s/ Staci G. Cornelius
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE