## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| GEOFFREY WANJOHI, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cv-00742-SGC |
| | ) | |
| PIONEER INVESTMENT & | ) | |
| DEVELOPMENT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>[1]

This lawsuit alleges violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").  (Doc. 11).  The plaintiffs, Geoffrey Wanjohi and Teresa Perez Lopez, claim they are owed back overtime wages by the defendants, Pioneer Investment & Development, LLC, and Arzaan Food Mart, LLC.  (*Id.*).  This matter is before the court on reconsideration of the cross-motions for summary judgment filed by the plaintiffs and Arzaan.  (Docs. 31, 35).  As explained below, Arzaan's motion will be granted as to Lopez, but the plaintiffs' motion will be granted in all other respects.

## I.   PROCEDURAL HISTORY

Wanjohi initiated this matter by filing a collective action complaint against Pioneer on May 28, 2021.  (Doc. 1).  On June 24, 2021, the plaintiffs filed an

---

[1] The parties have consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c).  (Doc. 18).

amended complaint adding Lopez as a plaintiff against Pioneer.   (Doc. 5).  Lopez and Wanjohi were the only parties who consented to join as plaintiffs. (Doc. 6).  On July 23, 2021, the plaintiffs filed the Second Amended Complaint, the operative complaint in this matter, adding Arzaan as a defendant.  (Doc. 11).  A motion for leave to file a Third Amended Complaint, premised on adding new defendants that may have purchased Pioneer, was denied without prejudice.  (Docs. 34, 45).

After discovery, the plaintiffs filed a joint motion for summary judgment against both defendants; Arzaan sought defensive summary judgment against both plaintiffs, but Pioneer did not file a potentially dispositive motion.  (Docs. 31-33, 35-43).  On March 22, 2024, the court entered a memorandum opinion and order adjudicating the cross-motions for summary judgment.  Under the memorandum opinion, the only claims left for trial were Wanjohi's against Arzaan.  (Doc. 46).

After mediation failed to resolve the remaining claims, the parties submitted pretrial materials in accordance with the pretrial order.  (Docs. 52-64).  The parties' pretrial filings undermined the memorandum opinion, and Wanjohi filed a motion to reconsider the partial denial of his summary judgment motion.  (Doc. 67; *see* Docs. 69-70).   After briefing, the court granted the motion to reconsider and withdrew the March 22, 2024 memorandum opinion; the instant opinion replaces it. (Doc. 71).  In re-addressing the parties' motions for summary judgment, the court has considered the parties' motions and briefs, the pretrial submissions, and the

filings addressing the motion to reconsider.  (Docs. 31-33, 35-43, 52-64, 67, 69-70).

## II.    SUMMARY JUDGMENT STANDARD

Under Rule 56 of the *Federal Rules of Civil Procedure*, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 323.  Once the moving party has met its burden, the non-moving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.  *See id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Only disputes over facts that might affect the outcome of the case will preclude summary judgment.  *Id.*  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." *S. Pilot Ins. Co. v. CECS, Inc.*, 52 F. Supp. 3d 1240, 1242-43 (N.D. Ga. 2014) (citing *Am. Bankers Ins. Group v. United States,* 408 F.3d 1328, 1331 (11th Cir. 2005)). "The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." *Id.*

## III.   FACTS

The plaintiffs worked at a convenience store located on McFarland Boulevard (the "McFarland Store") in Tuscaloosa, Alabama. (Doc. 36-1 at 1; Doc. 36-23 at 1; Doc. 36-24 at 20-21). The McFarland Store was owned by Pioneer; Pioneer also owned a convenience store located on 15th Street in Tuscaloosa. (Doc. 36-24 at 5; Doc. 36-1 at 2). Nisha Bagani owned Pioneer, but she had very little involvement with operating the stores. (Doc. 36-24 at 5; Doc. 36-29 at 5). Instead, Aziz Hirani oversaw the Pioneer stores during the relevant time. (Doc. 36-24 at 5-6; Doc. 36-29 at 6). Hirani handled all aspects of the day-to-day operations, including approving

payroll for Pioneer employees. (Doc. 36-24 at 5-6, 11-12). Hirani also testified as Pioneer's corporate representative in this case. (*Id.* at 4-5, 63-66).

Hirani interviewed and hired Wanjohi to manage the McFarland Store in March 2017; Wanjohi worked there until he left in January 2021. (Doc. 36-28 at 6; Doc. 36-24 at 8, 20). Wanjohi did not speak to Nisha Bagani prior to working at the McFarland Store; indeed, he never had a conversation with Nisha Bagani. (Doc. 36-28 at 6, 9). Instead, Wanjohi dealt exclusively with Hirani, whom he assumed owned the McFarland Store. (*Id.* at 6-7). Wanjohi recommended Lopez, whom Hirani interviewed and hired in July 2019. (*Id.* at 8; Doc. 36-23 at 1; Doc. 36-24 at 21). Lopez worked at the McFarland Store until June 2021. (Doc. 36-23 at 1; Doc. 36-24 at 1).

Pioneer used an accounting firm, Profitability Squared, to prepare its payroll and tax records. (Doc. 36-35 at 3-4; *see* Doc. 36-24 at 8, 12-13, 17). Hirani was Pioneer's contact for Profitability Squared. (Doc. 36-35 at 4). The payroll records Profitability Squared generated reflect the information Pioneer provided regarding the plaintiffs' hourly wages and the hours they worked each week. (*Id.* at 12-14). These payroll records show the plaintiffs always worked exactly forty hours per week. (*Id.* at 12-14, 40-46; Doc. 36-36; Doc. 36-38 at 1-3). Regarding hourly wages, the payroll records reflect: (1) Wanjohi initially earned $7.25, which was later raised to $8.00; and (2) Lopez earned $7.25 per hour. (Doc. 36-35 at 40-46;

Doc. 36-36; Doc. 36-38 at 1-3; Doc. 39-1; Doc. 39-2).

Profitability Squared's payroll records notwithstanding, Hirani testified—as Pioneer's corporate representative—that they do not accurately reflect the plaintiffs' wages, the hours they worked, or the amounts they were paid.  (Doc. 36-24 at 13, 17).  Hirani testified the plaintiffs regularly worked more than forty hours per week and were paid the same hourly rate for all hours worked.  (*Id.* at 13-14). Additionally, the hourly rates the plaintiffs actually earned were higher than the rates reflected on the payroll records: (1) Wanjohi's initial hourly wage was $13.50, which was subsequently raised to $14.00; and (2) Lopez's initial hourly wage was $9.00, later raised to $10.00 and then $11.00.  (*See* Doc. 36-1 at 4-5; Doc. 36-28 at 10; Doc. 36-23 at 1, 3).[2]

Hirani and the plaintiffs agree the employees at the McFarland Store— including the plaintiffs—kept track of the hours they actually worked by filling out timecards.[3]  (Doc. 36-1 at 2; Doc. 36-23 at 2; Doc. 36-24 at 11-13; Doc. 36-28 at 6). At the end of the week, Wanjohi would send a photograph of his timecard—and those of the other McFarland Store employees'—to Hirani.  (Doc. 36-28 at 6-7; Doc. 36-23 at 2; Doc. 36-1 at 2; Doc. 36-24 at 11-12).  Hirani testified he reviewed and

---

[2] Hirani's testimony confirms the plaintiffs' actual hourly rates were higher than reflected in the payroll records generated by Profitability Squared.  (Doc. 36-24 at 14,17).

[3] Old timecards were stored in a drawer at the McFarland Store; Wanjohi took some of the timecards with him when he stopped working there.  (Doc. 36-28 at 8).  Many of the timecards appear on the record here.  (*E.g.* Doc. 36-2 through Doc. 36-20).

approved the timecards and would direct Wanjohi to pay himself and the other employees at the McFarland Store. (Doc. 36-24 at 10-12). Wanjohi typically paid himself, Lopez, and the other employees with cash from the register. (*Id.* at 13; Doc. 36-28 at 7, 9-10). Lopez complained to Wanjohi about not receiving overtime pay. (Doc. 36-28 at 9-10). Wanjohi repeatedly asked Hirani about overtime pay and relayed Lopez's concerns; Hirani told Wanjohi that Pioneer did not pay overtime, and Hirani did not speak to Lopez about the issue. (*Id*. at 10-11).

Nisha Bagani—Pioneer's owner—was married to Ahmed Bagani. (Doc. 36-29 at 5). Ahmed Bagani owned Arzaan. (Doc. 36-30 at 3). Arzaan operated a convenience store in Sylacauga, Alabama. (*Id.*). Like Pioneer, Arzaan used Profitability Squared to prepare its payroll and tax records. (*Id.* at 8). Aziz Hirani also worked for Arzaan, at least since 2021. (*Id.* at 9). Profitability Squared prepared Arzaan's payroll based on the information provided by Ahmed Bagani each week concerning the identities of the employees, the hours they worked, and their hourly wages. (*Id.* at 8-9). Wanjohi testified he never spoke to Ahmed Bagani about working for Arzaan,[4] never went to an Arzaan location, and never received a paycheck from Arzaan. (Doc. 36-28 at 9). However, Arzaan's payroll records list Wanjohi as an employee from May through September 2020. (Doc. 40-1; Doc. 36-

---

[4] Indeed, Wanjohi testified he never had a conversation with Ahmed Bagani. (Doc. 36-28 at 9).

37 at 14; *see* Doc. 36-35 at 17).[5]  Wanjohi received a W-2 showing Arzaan paid him

$5,220 in wages during 2020.  (Doc. 36-30 at 25).[6]  Ahmed Bagani—as Arzaan's

corporate representative—testified Wanjohi was employed by Arzaan in 2020, at the

same time he was employed by Pioneer.  (*Id.* at 9).  Finally, Arzaan has conceded

that Wanjohi was an Arzaan employee, at least for portions of 2020.[7]

## IV.   DISCUSSION

A plaintiff pursuing an FLSA claim must demonstrate employment by a

defendant engaged in interstate commerce and that the defendant failed to pay

minimum or overtime wages.  *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233,

1277 n.68 (11th Cir. 2008).  The FLSA requires employers to pay overtime to

employees who are "employed" more than forty hours per week.  29 U.S.C. §

207(a)(1).  Once an employee works forty hours in a week, they are entitled to

overtime pay—at least one-and-one-half times the regular hourly rate—for any

additional hours.  *See id.*

The statute defines an "employee" as "any individual employed by an

employer."  29 U.S.C. § 203(e)(1).  The statutory definition of "employer" is

---

[5] Like the payroll records from Pioneer, Arzaan's records show Wanjohi always worked exactly 40 hours per week; Arzaan's records report Wanjohi's hourly wage as $7.25.  (Doc. 40-1).

[6] Wanjohi also received a W-2 from Pioneer showing it paid him $9,860 in 2020.  (Doc. 39-5).

[7] The joint proposed jury instructions, signed by both parties, state: "Arzaan has stipulated that Mr. Wanjohi was an employee."  (Doc. 62 at 2).  In response to the motion to reconsider, Arzaan admits: "There is sufficient evidence to support a finding that Wanjohi was employed by Arzaan Food Mart, LLC, from May 26, 2020, through September 28, 2020."(Doc. 69 at 2).

similarly broad, encompassing both the employer for whom the employee directly works, as well as "any person acting directly or indirectly in the interests of an employer in relation to an employee." *Id.* at § 203(d). The term "employ" is defined as "to suffer or permit to work." *Id.* at § 203(g).

Given these expansive statutory definitions, an employee "may file suit directly against an employer that fails to pay him or her the statutory wage, or may make a derivative claim against any person who (1) acts on behalf of that employer and (2) asserts control over conditions of the employee's employment." *Josendis v. Wall to Wall Residence Repairs, Inc.,* 662 F.3d 1292, 1298 (11th Cir. 2011) (citing *Patel v. Wargo,* 803 F.2d 632, 637-38 (11th Cir. 1986)). Whether an entity is an employer under the FLSA depends on the totality of the circumstances and whether, "as a matter of economic reality, the individual is dependent on the entity." *Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1175 (11th Cir. 2012) (quoting *Antenor v. D & S Farms,* 88 F.3d 925, 929 (11th Cir. 1996)). Additionally, an employee may have more than one employer, and multiple employers may be liable for a single employee's overtime wages. *Layton*, 686 F.3d at 1175; *Guilarte v. Claramir's Loving Home, Inc.*, No. 10-22204, 2011 WL 13268841, at *2 (S.D. Fla. Mar. 8, 2011) (citing *Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962 (6th Cir. 1991)).

The FLSA requires employers to pay one and one-half times the "regular rate" of pay for overtime hours. *See* 29 U.S.C. § 207(a)(1). Although the statute does not

9

define "regular rate," the Supreme Court has stated "the regular rate refers to the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945); *see* 29 C.F.R. § 778.108. The Department of Labor has adopted this definition and stated the regular rate cannot be less than the minimum wage. 29 C.F.R. §§ 778.107, 778.108.

A plaintiff asserting an FLSA claim "must prove that he was suffered or permitted to work without compensation." *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007). A plaintiff pursuing an overtime claim must show: (1) they worked overtime hours without compensation; and (2) the defendant knew—or should have known—about the overtime work. *See Reich v. Ala. Dep't of Cons. & Nat. Res.*, 28 F.3d 1076, 1082 (11th Cir. 1994). Although an FLSA plaintiff bears the burden of proving he or she worked overtime without compensation, the "remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Employers have a duty to keep records of the employee's wages and hours and occupy a superior position to know and produce the most probative evidence concerning the nature and amount of work performed. *Id.* Moreover, employees "seldom keep such records themselves." *Id.* Thus, a plaintiff's burden of proof is

"greatly lessened where an employer failed to keep adequate records." *Jarmon v. Vinson Guard Servs., Inc.*, No. 08-02106-VEH, 2010 WL 11507029, at *7 (N.D. Ala. July 13, 2010).

For the reasons articulated above, FLSA plaintiffs may rely on "anecdotal and imprecise" evidence to satisfy their initial burden where employers have not kept accurate records. *Bautista Hernandez v. Tadala's Nursery, Inc.*, 34 F. Supp. 3d 1229, 1241-42 (S.D. Fla. 2014) (citing *Anderson,* 328 U.S. at 687). Where employment records are inadequate, the employee satisfies his initial burden by proving "he has in fact performed work for which he was improperly compensated" and producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Lamonica v. Safe Hurricane Shutters, Inc.,* 711 F.3d 1299, 1315 (11th Cir. 2013) (quoting *Anderson*, 328 U.S. at 687-88). Once an employee satisfies his initial burden, the employer must present:

> evidence of the precise amount of work performed or [] evidence to negat[]e the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* "Employees, therefore, may recover even though the amount may be uncertain and the damages difficult to calculate." *Tadala's Nursery*, 34 F. Supp. 3d at 1241-42 (citing *Washington v. Miller,* 721 F.2d 797, 803 (11th Cir. 1983), *Reeves v. Int'l*

*Tel. & Tel. Corp.,* 616 F.2d 1342, 1352 (5th Cir. 1980), and *Marshall v. Mammas Fried Chicken, Inc.,* 590 F.2d 598, 599 (5th Cir. 1979)).

Under the FLSA, actions to recover unpaid overtime compensation must be brought within two years after the cause of action accrued.  29 U.S.C. § 255(a).  If the employer "willfully" violated the FLSA, the limitation period is extended to three years.  *Id.*  In order to prove a willful violation, the employees must show "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]."  *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988).

Finally, the FLSA provides for liquidated damages equal to the amount of unpaid overtime. 29 U.S.C. § 216(b).  However, if the defendant can show it acted in good faith, the court has discretion to withhold the liquidated damages.  29 U.S.C. § 260.  The good faith inquiry has both an objective and a subjective component. *Dybach v. State of Fla. Dep't of Corr.,* 942 F.2d 1562, 1566 (11th Cir.1991).  To satisfy the subjective component, an employer bears the burden of proving it had "an honest intention to ascertain what the FLSA requires and to act in accordance with it."  *Id.* (alterations incorporated; punctuation omitted)

Having set out the governing law, the parties' motions—the plaintiffs' and Arzaan's—are reconsidered below. (Docs. 31, 35).  In response to Arzaan's motion, Lopez conceded her claims against it; the only remaining claims against Arzaan are

Wanjohi's.  (Doc. 40 at 2).  The motions as they relate to the particular parties are addressed in turn.

### A.    **Plaintiffs' Motion for Summary Judgment as to Pioneer**

Pioneer acknowledges it employed the plaintiffs and was engaged in interstate commerce.  (*See* Doc. 39 at 6).  Thus, the only issue is whether Pioneer failed to provide overtime compensation to the plaintiffs.  Hirani—as Pioneer's corporate representative—testified the payroll records generated by Profitability Squared do not accurately reflect either the amount of hours the plaintiffs worked or their hourly wages. (Doc. 36-24 at 17).  Indeed, Profitability Squared created the records based solely on the false wage and hour information provided by Pioneer.  (Doc. 36-35 at 12).  Hirani testified the plaintiffs' actual hourly wages and the hours they worked were reflected on the timecards Wanjohi submitted to him for approval.  (Doc. 36-24 at 10-12).  Accordingly, even viewing the facts in the light most favorable to Pioneer, it is undisputed the payroll records prepared by Profitability Squared are erroneous.

Because Pioneer did not keep accurate wage and hour records for its employees, the plaintiffs' initial burden to show improper overtime compensation is "greatly lessened," and they may rely on "anecdotal and imprecise" evidence. *Jarmon*, 2010 WL 11507029, at *7; *Tadala's Nursery*, 34 F. Supp. 3d at 1242; *see Lamonica*, 711 F.3d at 1315.  The plaintiffs have produced evidence they regularly

worked more than forty hours per week but received the same hourly wage for all hours worked.  Hirani's testimony confirms the plaintiffs' proof.

To establish the amount and extent of work they performed, the plaintiffs rely on the weekly timecards Hirani approved.  These timecards show the hours the plaintiffs worked and, often, the amount they were paid; dividing the amount by the hours worked reveals the regular rate for a given week.  (*See* Doc. 36-34).  The record includes timecards covering the majority of the weeks the plaintiffs worked.[8] To fill in the blanks created by the missing timecards, the plaintiffs have calculated the hours worked by averaging the weekly hours reflected in the existing timecards. (*See id.*).  This constitutes "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Lamonica*, 711 F.3d at 1315. Accordingly, the plaintiffs have met their initial burden to show the amount of overtime pay Pioneer owes.

Because the plaintiffs have made an initial showing of improper compensation, the burden shifts to Pioneer to present evidence sufficient to overcome it.  *Lamonica,* 711 F.3d at 1315.  To that end, Pioneer's single paragraph of substantive argument relies exclusively on the payroll records created by Profitability Squared, purporting to show the plaintiffs never worked more than forty

---

[8] Out of 128 weeks, Wanjohi is missing timecards for 24.  (Doc. 36-34 at 7-10).  Out of 91 weeks Lopez worked for Pioneer, she is missing timecards for 28.  (*Id.* at 11-15).

hours a week.  (Doc. 39 at 6).  It is undisputed the payroll records in question are fabrications.  Therefore, they do not overcome the plaintiffs' showing.[9]  Because Pioneer offers no other evidence, the plaintiffs are entitled to judgment as a matter of law on their FLSA overtime claims.  *See Lamonica,* 711 F.3d at 1315.

To calculate Wanjohi's damages, the court must determine whether Pioneer's FLSA violations were willful and, thus, subject to the three—as opposed to two—year statute of limitations.[10]  In order to prove a willful violation, Wanjohi must show Pioneer knew its conduct violated the FLSA or recklessly disregarded that risk. *McLaughlin*, 486 U.S. at 133.  Even viewing the facts in the light most favorable to Pioneer, it willfully violated the FLSA's overtime provisions.  First, it is undisputed that when confronted with Wanjohi's questions, Hirani simply stated Pioneer did not pay overtime.  Next, Pioneer's undisputed record-keeping shenanigans support a finding of willfulness.[11]  While Pioneer reported to Profitability Squared that the plaintiffs worked forty hours every week, they regularly worked many more hours. These intentional efforts to conceal Pioneer's noncompliance with the FLSA demonstrate the willfulness of the violations.  *Solis v. El Matador, Inc.*, No. 08-2237,

---

[9] To the extent Pioneer may rely on the plaintiffs' W-2s to establish their wages and hours, the W-2s were based on the same false wage and hour information Pioneer provided to Profitability Squared.  (*See* Doc. 39 at 6).  These W-2s perfectly illustrate the adage "garbage in, garbage out."

[10] Because all of Lopez's claims accrued less than two years before the complaint was filed, her damages are the same regardless whether Pioneer's conduct was willful.

[11] Although not determinative, it is worth noting Pioneer's underreporting reduced its payroll tax liability, which was further reduced by its underreporting of employees' hourly pay rates.

2011 WL 1671561, at *5 (C.D. Ill. May 3, 2011); *see Donovan v. Pointon,* 717 F.2d 1320, 1323 (10th Cir. 1983) (finding willful violation where employer kept business records to falsely show FLSA compliance).  Accordingly, the three-year limitation period applies to Wanjohi's claims.

To calculate their damages, the plaintiffs have multiplied the overtime hours they worked in a given week—reflected on the timecards or deduced by averaging—by half the applicable hourly rates for that week.[12]  This constitutes sufficient evidence to show "the amount and extent of" the work the plaintiffs performed "as a matter of just and reasonable inference." *Lamonica*, 711 F.3d at 1315.  For Lopez, the plaintiffs' calculations show she is entitled to $6,484.82 in overtime pay.  For Wanjohi, these calculations show he—over the three-year limitation period—is entitled to $34,673.94 in unpaid overtime compensation.[13]  (Doc. 36-34).  While the plaintiffs' precise damages are uncertain, particularly where they have relied on averages to stand in for the missing timecards, this does not prevent their recovery under the circumstances of this case. *Tadala's Nursery*, 34 F. Supp. 3d at 1241-42. Indeed, in response to the plaintiffs' thorough and well-supported motion for summary judgment, Pioneer has only relied on the payroll records created by

---

[12] As the plaintiffs acknowledge, Pioneer already paid the regular rate for all hours worked, so they are only entitled to the additional overtime pay for hours they worked in excess of forty in a given week.

[13] Pioneer is liable for all of Wanjohi's unpaid overtime.  As explained in more detail below, Pioneer's liability for Wanjohi's unpaid overtime from 2020 will be joint and several with Arzaan.

Profitability Squared—records Pioneer effectively admits are worthless.   Thus,
Pioneer has not offered evidence showing "the precise amount of work performed
or [] evidence to negat[]e the reasonableness of the inference to be drawn from the
[plaintiffs'] evidence." *Lamonica,* 711 F.3d at 1315.   Given Pioneer has failed to
offer any such proof—or even any argument—it is proper to award the plaintiffs
damages. *Id.*   Moreover, the plaintiffs' calculations of the overtime compensation
owed by Pioneer are essentially uncontested.

Based on the foregoing, Wanjohi is entitled to $34,673.94 in unpaid overtime
compensation, while Lopez is entitled to $6,484.82.   Additionally, the plaintiffs are
entitled to liquidated damages equal to their unpaid overtime pay.   29 U.S.C. §
216(b).   Pioneer has not pointed to any evidence to show it acted in good faith and
thus has utterly failed to satisfy its burden in this regard.   29 U.S.C. § 260; *see
Cloutier v. City of Phenix City*, 834 F. Supp. 366, 372-74 (M.D. Ala. 1993) (plaintiffs
entitled to liquidated damages where employer offered no evidence it acted in good
faith).   With liquidated damages included, Lopez is entitled to a total of $12,969.64
in damages from Pioneer.   Wanjohi is entitled to a total of $69,347.88 in damages
from Pioneer, although it will share joint and several liability with Arzaan for a
portion of that total.

### B.   <u>Arzaan's Motion and Wanjohi's Motion as to Arzaan</u>

As previously noted, Lopez has conceded her claims against Arzaan; Arzaan's

motion for summary judgment will be granted with respect to Lopez.  Thus, only Wanjohi's claims against Arzaan remain.

In the summary judgment briefing, Arzaan contended it never employed Wanjohi.  (Doc. 33 at 7-9; Doc. 38 at 2).  The withdrawn memorandum opinion concluded there were genuine issues of material fact concerning this question.  (Doc. 46 at 16-18).  The parties' joint proposed jury instructions, signed by Arzaan's counsel, include Arzaan's stipulation that it did, in fact, employ Wanjohi.  (Doc. 62 at 2).  In response to Wanjohi's motion to reconsider, Arzaan reaffirms it employed Wanjohi, at least for portions of 2020.  (Doc. 69 at 2).  Accordingly, whether Wanjohi was an Arzaan employee is no longer in doubt.  *See Spears v. Bay Inn & Suites Foley, LLC*, 105 F.4th 1315, 1321 (11th Cir. 2024) ("Factual stipulations are formal concessions that 'have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof.'") (quoting *Cristian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*, 561 U.S. 661, 677-78 (2010)).[14]

---

[14] Even without Arzaan's explicit acknowledgement that it employed Wanjohi, reconsideration of the summary judgment record shows Wanjohi was an Arzaan employee.  In finding genuine issues of material fact regarding Wanjohi's employment status, the withdrawn memorandum opinion relied on his testimony that he never: (1) worked at an Arzaan location; (2) received a paycheck from Arzaan; and/or (3) spoke to Arzaan's owner.  This evidence seemed to cut against the notion that Arzaan employed Wanjohi, but it largely mirrors the evidence concerning Pioneer—his undisputed employer.  While Wanjohi did work exclusively at Pioneer's McFarland Store, he also did not typically receive paychecks from Pioneer; he paid himself with cash from the register.  Likewise, Wanjohi never spoke to Pioneer's owner.  Even viewing the facts in the light most favorable to Arzaan, it was Wanjohi's employer.  This is especially true given Arzaan's corporate representative's affirmative testimony, as well as payroll and tax documentation showing Arzaan paid Wanjohi wages in 2020.  On reconsideration, the evidence cited in the withdrawn

Next, the withdrawn memorandum opinion concluded there were genuine issues of fact concerning whether Arzaan ever employed Wanjohi for more than 40 hours a week but failed to pay him an overtime wage.  (Doc. 46 at 16-18).  The parties' pretrial filings undermined this reasoning, as well.  Wanjohi's damages list clarified that the only overtime compensation to which he claims entitlement was from hours he worked at the McFarland Store.  (*Compare* Doc. 61-1 with Doc. 36-34 at 9-10; *see also* Doc. 67 at 9, n.4).[15]  The court has already determined the amount of uncompensated overtime hours Wanjohi worked, when he worked them, and the applicable overtime rate owed.  (*See* Section IV. A., *supra*; Doc. 36-34 at 9-10).[16]  Thus, the record and the preceding discussion establish that Wanjohi worked over overtime hours for Arzaan in 2020 but did not receive overtime pay.

Indeed, the payroll records—created by Profitability Squared based on information provided by Pioneer and Arzaan—show he was paid by both defendants during 2020.  Specifically, the records show some weeks in 2020 when Wanjohi was paid by Pioneer only, some weeks when he was paid by Arzaan only, and some

---

memorandum opinion does not amount to a genuine factual dispute regarding whether Arzaan employed Wanjohi.

[15] Arzaan did not object to the inclusion of the damages list on Wanjohi's exhibit list.  (Doc. 54 at 6).  The deadline to object to the exhibit list expired before the court continued the trial in this matter.  (*See* Doc. 52 at 7).

[16] Arzaan and Pioneer are represented by the same lawyer.  Arzaan's response to the motion to reconsider states: "It is also undisputed that Pioneer was engaged in interstate commerce and failed to provide overtime compensation to Wanjohi from 2017 to 2021 in the amount of $34,673.94, plus liquidated damages in the amount of $34,673.94."  (Doc. 69 at 3).

weeks he was paid by both defendants.  (Compare Doc. 40-1 *with* Doc. 36-36).

Accordingly, while Wanjohi performed all of the work at issue in this case at the

Pioneer-owned McFarland Store, he was employed by both defendants in 2020, as

Arzaan has admitted.[17]

While the record does not include much evidence relevant to the typical eight-

factor test for joint employment, the "economic reality" here is that Wanjohi was

dependent on both Pioneer and Arzaan for overlapping periods in 2020.  *See Layton*,

494 F. App'x at 943.  Additionally, the fact that Arzaan paid Wanjohi for work he

performed at Pioneer's McFarland Store indicates the defendants jointly employed

him.  As such, Arzaan and Pioneer are jointly and severally liable for Wanjohi's

unpaid overtime in 2020, when he worked for both.  *See Kasby v. Upper Deck Bar*

*& Grill, LLC*, No. 11-152, 2013 WL 6050747, at *4–5 (M.D. Fla. Nov. 15, 2013);

*Seong Song v. JFE Franchising, Inc.*, 394 F. Supp. 3d 748, 757-58 (S.D. Tex. 2019).

The same record that establishes Wanjohi's total unpaid overtime damages

also demonstrates to a sum certain his unpaid overtime in 2020: $13,980.93.  (Doc.

36-34 at 7-10; *see* Doc. 67 at 9, n.4; *see also* Doc. 61-1).  Because Wanjohi incurred

his 2020 damages within two years of when the action accrued, there is no need to

---

[17] Although not determinative, it is also worth noting that some evidence indicates Arzaan and Pioneer are not entirely disassociated entities.  The two defendants are owned by a married couple, Nisha (Pioneer) and Ahmed Bagani (Arzaan).  The record includes documents Bagani signed on behalf of Pioneer, including some listing him as Pioneer's owner.  (Doc. 70-1).

determine whether Arzaan's FLSA violations were willful. 29 U.S.C. § 255(a). Finally, Arzaan has made no attempt to show it acted in good faith. Accordingly, Arzaan is liable for liquidated damages equal to Wanjohi's 2020 unpaid overtime damages, for a total of $27,961.86. 29 U.S.C. § 216(b).

## V.   CONCLUSION

For all of the foregoing reasons and as specified below: (1) Arzaan's motion for summary judgment (Doc. 31) is **GRANTED IN PART** and **DENIED IN PART**; and (2) the plaintiffs' motion for summary judgment (Doc. 35) is **GRANTED** in its entirety. Arzaan's motion for summary judgment is **GRANTED** as to Lopez, who has conceded her claims. (Doc. 31). Arzaan's motion for summary judgment is **DENIED** in all other respects.

Regarding the plaintiffs' motion for summary judgment, there are no genuine issues of material fact, and they are entitled to judgment as a matter of law. Their motion for summary judgment is **GRANTED** (Doc. 35). Lopez is entitled to a total of $12,969.64 in unpaid overtime and liquidated damages from Pioneer. Wanjohi is entitled to a total of $69,347.88 in unpaid overtime and liquidated damages; of that total, Pioneer and Arzaan are jointly and severally liable for $27,961.86, while Pioneer is solely liable $41,386.02. A separate order will be entered.

**DONE** this 30th day of September, 2024.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE